Index No.  14 Civ. 8036 (KPF)

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

TRACY CATAPANO-FOX,

Plaintiff,

-against-

THE CITY OF NEW YORK; RICHARD EMERY,  in
his personal and professional capacities; and BISHOP
MITCHELL TAYLOR, in his personal and professional
capacities,

Defendants.

## MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS THE AMENDED COMPLAINT

***ZACHARY W. CARTER***
*Corporation Counsel of the City of New York*

*Attorney for City Defendants*
*100 Church Street*
*New York, N.Y.  10007*

*Of Counsel:  Donna A. Canfield*
*Tel:  (212) 356-2461*
*Matter No. 2014-036308*

# TABLE OF CONTENTS

**Page**

TABLE OF CONTENTS.................................................................................................i

TABLE OF AUTHORITIES ........................................................................................iii

PRELIMINARY STATEMENT ....................................................................................1

STATEMENT OF RELEVANT FACTS .......................................................................2

ARGUMENT .................................................................................................................7

      POINT I.     THE AMENDED COMPLAINT FAILS TO
                    STATE A CLAIM UPON WHICH RELIEF MAY
                    GRANTED .........................................................................7

                    A.   The Applicable Standard In Reviewing A Rule
                          12(b)(6) Motion To Dismiss ...................................7

                    B.   Plaintiff's Allegations of §1981 Retaliation Fail
                          to State a Claim Upon Which Relief Can Be
                          Granted .................................................................8

                    C.   Plaintiff Fails to State a Claim for Retaliation
                          Under Title VII ....................................................10

                          (i) Plaintiff's Complaint of Disparate Impact
                              Race Discrimination Did Not Constitute
                              "Protected Activity" For Purposes of a
                              Retaliation Claim Under Title VII....................10

                        (ii) Plaintiff's Complaints of Sex Discrimination
                              Were Not Made In Good Faith and Did Not
                            Constitute   "Protected   Activity"   For
                            Purposes of a Retaliation Claim Under Title
                            VII ...................................................................12

      POINT II.    THE COURT SHOULD DECLINE EXERCISING
                    SUPPLEMENTAL JURISDICTION OVER ANY
                    REMAINING STATE LAW CLAIMS ......................................16

                      A.   Should the Court Exercise Supplemental
                            Jurisdiction OVer Plaintiff's State Law Claims,
                            These Claims Must Also Be Dismissed as
                            Plaintiff Has Not Demonstrated That She Is
                            Entitled to Relief..................................................16

    (i) Plaintiff's SHRL, CHRL, and Breach of
        Contract Claims Are Barred by the Election
        of Remedies Doctrine .....................................................................16

    (ii) Plaintiff Has Failed to Demonstrate That
        She is Entitled to Relief Under Civil Service
        Law Section 75-b .........................................................................17

CONCLUSION .............................................................................................................20

# TABLE OF AUTHORITIES

Page(s)

## Cases

Albert v. Carovano,
851 F.2d 561 (2d Cir. 1988)..................................................................9

Ashcroft v. Iqbal,
556 U.S. 662, 129 S. Ct. 1937 (2009) ...............................................7, 8

Bell Atlantic Corp. v. Twombly,
550 U.S. 544 (2007).............................................................................7

Bowen-Hooks v. City of New York, et al.,
13 F. Supp. 3d 179 (E.D.N.Y. 2014) .................................................15

Brown v. City of Syracuse,
No. 5:01-CV-1523, 2008 WL 5451020 (N.D.N.Y. Dec. 31, 2008) .......17

Burns v. Cook,
458 F. Supp. 2d 29 (N.D.N.Y. 2006) .................................................17

Carnegie-Mellon University v. Cohill,
484 U.S. 343 (1988)...........................................................................16

Chambers v. Time Warner, Inc.,
282 F.3d 147 (2d Cir. 2002) ................................................................2

Chenette v. Kenneth Cole Prods., Inc.,
345 F. App'x 615 (2d Cir. 2009) ........................................................14

Clark Cnty. Sch. Dist. v. Breeden,
532 U.S. 268 (2001)...........................................................................14

DeMatties v. Eastman Kodak Co.,
511 F.2d 306 (2d Cir. 1975)................................................................8

DiFolco v. MSNBC Cable L.L.C.,
622 F.3d 104 (2d Cir. 2010)................................................................2

Elec. Comm. Corp. v. Toshiba America Consumer Prods., Inc.,
129 F.3d 240 (2d Cir. 1997)............................................................8, 19

Freese v Willa,
89 A.D.3d 795 (2d Dep't 2011) .........................................................17

Galderi-Ambrosini v. Nat'l Realty & Dev. Corp.,
 136 F.3d 276 (2d Cir. 1998).................................................................................10

General Building Contractors Assn. v. Pennsylvania United Engineers and
 Constructors, Inc.,
 458 U.S. 375 (1982)...........................................................................................9

Giordano v. City of New York,
 274 F.3d 740 (2d Cir. 2001).................................................................................16

Guzman v. News Corp, NYP Holdings, Inc., et al.,
 2013 U.S. Dist. LEXIS 155026 (S.D.N.Y. October 28, 2013) ..............................15

Hall v. New York Hospital,
 2003 U.S. Dist. LEXIS 22039 (S.D.N.Y. December 5, 2003) .................................9

Hollander v. American Cyanamid Co.,
 895 F.2d 80 (2d Cir. 1990)...................................................................................15

Kelly v. Howard I. Shapiro & Assocs. Consulting Eng, P.C., et al.,
 716 F.3d 10 (2d Cir. 2014)...................................................................................12

Kirwin v. New York State Office of Mental Health,
 665 F. Supp. 1034 (E.D.N.Y. 1987) ....................................................................17

Manoharan v. Columbia College of Physicians and Surgeons,
 842 F.2d 590 (2d Cir. 1988).................................................................................11

Martin v. Chemical Bank,
 1997 U.S. App. LEXIS 32022 (2d Cir. 1997) ......................................................10

Mian v. Donaldson, Lufkin & Jenrette Securities Corporation,
 7 F.3d 1085 (2d Cir. 1993)....................................................................................8

Nielsen v. AECOM Tech. Corp.,
 762 F.3d 214 (2d Cir. 2014).................................................................................18

Papasan v. Allain,
 478 U.S. 265 (1986).........................................................................................8, 19

Rigle v. County of Onondaga,
 267 A.D.2d 1088 (4th Dep't 1999) ......................................................................17

Tomka v. Seiler,
 66 F.3d 1295 (2d Cir. 1995).................................................................................10

Tops Markets, Inc. v. Quality Markets,
 142 F.3d 90 (2d Cir. 1998)...................................................................................16

United Mine Workers v. Gibbs,
  383 U.S. 715 (1966)........................................................................................16

Wallikas v. Harder,
  67 F. Supp. 2d 82 (N.D.N.Y. 1999).................................................................17

Wimmer v. Suffolk County Police Dep't.,
  176 F.3d 125 (2d Cir.), cert. denied, 528 U.S. 964 (1999) ...........................11

Wrighten v. Glowski,
  232 F.3d 119 (2d Cir. 2000)............................................................................10

**Federal Statutes**

28 U.S.C. § 1367 (c) (3).......................................................................................16

42 U.S.C. § 1981(a) ........................................................................................1, 8, 9

42 U.S.C. §§ 2000e et seq..............................................1, 8, 9, 10, 11, 12, 13, 14, 15

Fed. R Civ. P 12(b)(6)..............................................................................2, 7, 8, 19

**New York Statutes**

New York Executive Law §§ 290 et seq. ........................................................1, 16, 17

N.Y. Civil Service Law §75-b ...............................................................1, 16, 17, 18, 19

N. Y. Labor Law § 740 .......................................................................................1, 16, 17

**Other Authorities**

N.Y.C. Administrative Code §§ 8-107 et seq. ...................................................................1

New York City Charter, Chapter 18-A ...............................................................2, 5, 19

# PRELIMINARY STATEMENT

Defendants, City of New York ("City"), Richard Emery, individually and in his professional capacity, and Bishop Mitchell Taylor, individually and in his official capacity (hereinafter "the Defendants"), respectfully submit this Memorandum of Law in support of their motion to dismiss the amended Complaint.[1]

As explained more fully below, plaintiff has not stated a claim upon which relief can be granted to the extent she alleges she was retaliated against in violation of Section 1981 of the Civil Rights Act of 1986, 42 U.S.C. § 1981 ("§ 1981"), 42 U.S.C. §§ 2000e et seq. ("Title VII"), the New York State Human Rights Law, New York Executive Law §§ 290 et seq. ("SHRL"), the New York City Human Rights Law, N.Y.C. Administrative Code §§ 8-107 et seq. ("CHRL"), or New York Civil Service Law 75-b ("§ 75-b"). Additionally, the election of remedies provision set forth in New York Labor Law § 740(7) bars plaintiff from asserting any other state law cause of action related to her alleged retaliatory discharge. Therefore, plaintiff's SHRL, CHRL, and breach of contract claims must be dismissed. Of course, it is well-settled that individuals cannot be held liable under Title VII. Therefore, in the event that plaintiff's Title VII claim survives, it should be dismissed as against Emery and Taylor. In addition, individuals may not be held liable under Civil Service Law §75-b. Lastly, in that plaintiff's federal claims are subject to dismissal, this Court should decline to exercise supplemental jurisdiction over any remaining state law claims and dismiss this action.

---

[1] For the convenience of the Court a copy of the amended Complaint is attached as Exhibit A.

## STATEMENT OF RELEVANT FACTS[2]

The New York City Civilian Complaint Review Board ("CCRB" or "Board") was established to ensure that the citizens of New York City ("City") have a fair and impartial resource for addressing police misconduct. Ex. A at ¶ 1; see also New York City Charter, Chapter 18-A "Civilian Complaint Review Board," annexed to the Declaration of Assistant Corporation Counsel Donna A. Canfield (hereinafter "Canfield Decl.") as Exhibit B. The Board is comprised of thirteen members of the public - one from each of the five boroughs as designated by City Counsel; three with experience in law enforcement designated by New York City Police Commissioner; and the remaining five selected by the Mayor. Ex. B at §440 (b) (1). In June 2013, plaintiff was appointed by the 13-member Board to be the agency's Executive Director in charge of managing the CCRB's daily operations. Id. at ¶14. Prior to plaintiff's appointment to the Executive Director position, plaintiff was prosecutor and Chief Clerk for the Queens County Courts. Id. at ¶ 15.

Plaintiff alleges that in March 2014, a female CCRB employee told plaintiff that she was not comfortable going to a conference she was scheduled to attend because the head of the Board's Executive Committee, defendant Bishop Mitchell Taylor ("Taylor"), had previously sexually harassed her, and he too planned to attend the conference. Id. at 19. The female

---

[2] For purposes of this Motion to Dismiss only, the material factual allegations set forth in the amended Complaint are assumed true and will form the basis for the statement of facts. Additionally, in reviewing a motion to dismiss pursuant to Rule 12(b)(6), a court may consider: (1) the facts alleged in the complaint, (2) documents attached to the complaint as exhibits, (3) documents incorporated by reference in the complaint, and (4) documents where "the complaint 'relies heavily upon its terms and effect,' thereby rendering the document 'integral' to the complaint") DiFolco v. MSNBC Cable L.L.C., 622 F.3d 104, 111 (2d Cir. 2010) (citation omitted); see also Chambers v. Time Warner, Inc., 282 F.3d 147, 153 (2d Cir. 2002) (in reviewing a motion to dismiss a complaint, "a court may consider 'documents attached to the complaint as an exhibit or incorporated in it by reference, … matters of which judicial notice may be taken, or … documents in either plaintiffs' possession or of which plaintiffs had knowledge and relied on in bringing suit'") (citing Brass v. American Film Technologies, Inc., 987 F.2d 142, 150 (2d Cir. 1993)).

employee informed plaintiff that she had reported the incident to the prior Executive Director. Id. at ¶ 20. The incident was also reported to CCRB's Equal Employment Opportunity ("EEO") Officer, Marcos Soler ("Soler"), who was present at the time and place that this female employee claimed the harassment by defendant Taylor occurred. Id. at ¶ 21. In a memorandum dated September 20, 2011 to prior CCRB Executive Director Joan Thompson ("Thompson"), Soler documented his account of the events occurring on the evening during which the female employee claimed she was sexually harassed. See Memorandum, dated September 20, 2011 annexed to the Canfield Decl. as Exhibit C.

On or about April 11, 2014, plaintiff sent Soler's September 20, 2011 memorandum to New York City's Chief EEO and Diversity Officer, R. Fenimore Fisher ("Fisher"), including the following:

> In an effort to familiarize myself with our EEO history, I reviewed the computer file regarding EEO matters. During my review, I found the attached memo from Marcos Soler, the EEO Officer, to the former Executive Director Joan Thompson. I did not find any EEO investigation or other paperwork detailing this event.
>
> Please review the attached memo and advise me on how to proceed. I am concerned that this matter is over 2 years old and I do not know what my obligations are as Executive Director, which is why I am forwarding it to you for guidance.

See Email, dated April 11, 2014 from Tracy Catapano-Fox to R. Fenimore Fisher, annexed to the Canfield Decl. as Exhibit D.

By email on May 6, 2014, plaintiff also provided Fisher with documents from an EEO file regarding a June 2011 complaint registered against Taylor. In the email, plaintiff informed Fisher that the issue had been resolved by mediation. See Email, dated May 6, 2014, from Tracy Catapano-Fox to R. Fenimore Fisher, annexed to the Canfield Decl. as Exhibit E.

In or around May 2014, plaintiff alleges that Taylor sent a very sexually inappropriate statement by email to another CCRB employee. Specifically, in substantiating charges brought against a member of the New York City Police Department, defendant Taylor wrote, "[t]he strip search, more like a dick search. Crazy." <u>See</u> Memorandum, dated May 1, 2014 from Denise Alvarez to Tracy Catapano-Fox regarding CCRB Case Number 201305541, annexed to the Canfield Decl. as Exhibit F. Plaintiff became aware of Taylor's statement from another employee, and not the employee who received the email which contained the comment. Ex. A at ¶¶ 25-26. Once received, plaintiff reported the email to two members of the Board's Executive Committee, and to Fisher. <u>Id</u>. at ¶¶ 25 – 27.

Plaintiff alleges that immediately after she began reporting complaints against Taylor, he began retaliating against her by claiming that plaintiff had improperly promoted a purported friend with whom she spent time with in the Hamptons. <u>Id</u>. at ¶ 32. Plaintiff also claims that Taylor became "extremely hostile" and "increasingly aggressive" towards her. <u>Id</u>. at ¶ 33. In or around June 2014, plaintiff allegedly reported Taylor's retaliatory conduct to Kathleen Rubenstein of the New York City Mayor's Office, stating that she believed Taylor's conduct was in direct retaliation for reporting his sexual harassment of female CCRB employees.

On or around July 17, 2014, defendant Richard Emery ("Emery") was appointed Chair of the CCRB by the Mayor. Plaintiff alleges that the day after his appointment, Emery informed plaintiff that "he supported her and wanted her to stay on as Executive Director, but that the Mayor's office wanted to 'get rid' of her as soon as possible." <u>Id</u>. at ¶ 35.

Subsequent to Emery's appointment as Chair of the CCRB, plaintiff asserts that she repeatedly complained to Emery and to the Board that she believed Emery was colluding with the New York City Police Department ("NYPD") in an effort to prevent the CCRB from

performing its proper functions – in particular, (1) attempting to conceal important statistics regarding "stop and frisk" stops in New York City by excluding them from the mid-year report; (2) suggesting that the CCRB no longer accept and investigate "stop and frisk" complaints, and (3) suggesting that the CCRB no longer substantiate "stop and frisk" cases, even if it is determined that an improper "stop and frisk" has occurred. Id. at ¶¶ 40-43. Plaintiff claims that "stop and frisk" statistics were contained in every annual and semi-annual CCRB report over the last five years, and their removal in the mid-year report violated the CCRB's enabling statute, Chapter 18-A § 440(c)(6) of the New York City Charter. Id. at ¶ 43.

Plaintiff claims that she also complained to Emery about a new investigative process that Emery proposed for CCRB investigative employees. According to plaintiff, this new investigative process would require the investigator to determine the credibility of a complainant without conducting an investigation. Plaintiff, as well as two other CCRB employees, objected to the proposed investigative method on the grounds that the proposed method would have an "extremely disparate impact on minorities in New York City." Id. at ¶¶ 44-46.

In addition to the above, plaintiff alleges she complained to Emery that she believed Emery failed to conduct himself in an "impartial" and "independent" manner when he repeatedly refused to challenge the NYPD's failure to discipline officers who the CCRB had determined engaged in unlawful "stop and frisk" stops, among other allegedly unlawful conduct. Id. at ¶¶ 48-50. Plaintiff asserts that she also complained to Emery that statistics underlying a "Chokehold" report were inaccurate, but that Emery told plaintiff that he would publish the report irrespective of the accuracy of the statistics. Id. at ¶¶ 51-54.

In response to plaintiff's complaints, plaintiff alleges Emery repeatedly demanded that plaintiff resign or "suffer the consequences" of a stacked Board to ensure her termination. Id. at ¶¶ 55-56. Plaintiff also alleges that on September 9, 2014, Emery falsely informed the Mayor's office that she had agreed to post her job and that she would leave by the end of the year. Plaintiff claims that on September 10, 2014, the Mayor's office offered plaintiff her choice of jobs if she would agree to leave the CCRB. Id. at ¶¶ 56-57. Also on September 10, 2014, plaintiff complained to Maya Wiley [counsel to the Mayor] and Chloe Drew [Director, Mayor's Office on Appointments] that a "pattern of negative treatment against women exists at the CCRB." Id. at ¶ 59.

Plaintiff alleges that on September 11, 2014, Emery advised the Board that plaintiff had agreed to post her position, even though plaintiff had not agreed to resign from the CCRB. Emery thereafter again informed plaintiff that if she did not agree to post her job that she will "suffer the consequences." On September 12, 2014, Emery directed that plaintiff's Executive Director position be posted. Id. at ¶¶ 60-62.

Plaintiff claims that a Board meeting was scheduled for September 15, 2014 for the purpose of issuing a vote of "no confidence" in Emery. Id. at ¶ 61. Emery thereafter cancelled the Board meeting, and again threatened to "stack the Board" to have plaintiff terminated if she did not resign. Id. at ¶ 65.

On September 26, 2014, Emery, the Corporation Counsel of the City of New York, and the Mayor's office received notice that plaintiff had retained counsel for unlawful retaliation and was seeking an "amicable resolution of this matter." See September 26, 2014 letter from Douglas H. Wigdor to Richard D. Emery, annexed to Canfield Decl. at Exhibit G.

On October 1, 2014, the Mayor's office issued a press release announcing the appointment of four new Board members – two appointed by the Mayor's office and two by the NYPD. Id. at ¶ 71. On October 3, 2014 plaintiff was advised that if she did not tender her resignation by the close of business, October 6, 2014, she would be terminated. After plaintiff refused to resign, she was terminated, effective October 6, 2014.

## ARGUMENT

## POINT I

## THE AMENDED COMPLAINT FAILS TO STATE A CLAIM UPON WHICH RELIEF MAY GRANTED

### A. The Applicable Standard In Reviewing A Rule 12(b)(6) Motion To Dismiss

The facts set forth in the complaint "must be enough to raise a right to relief above the speculative level[.]" Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007) (citation omitted). A party's "obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions . . . ." Id. (internal quotation marks and alteration omitted). The Supreme Court most recently explained the standard in Ashcroft v. Iqbal stating that, "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'. . . The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." Ashcroft v. Iqbal, 556 U.S. 662, 129 S. Ct. 1937, 1949 (2009). Conclusory statements fail to meet the pleading standard set forth in Iqbal and Twombly. "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of 'entitlement to relief.'" Id. at 679 (quoting Twombly, 550 U.S. at 557).

These pleading standards must be read together with the familiar Rule 12(b)(6) admonition that courts may neither (i) "'assume that the [Plaintiff] can prove facts that [he] has not alleged,'" Elec. Comm. Corp. v. Toshiba America Consumer Prods., Inc., 129 F.3d 240, 243 (2d Cir. 1997) (quoting Assoc. Gen. Contractors of Cal., Inc. v. Cal. State Council of Carpenters, 459 U.S. 519, 526 (1983)) (alteration in original), nor (ii) "accept as true a legal conclusion couched as a factual allegation." Papasan v. Allain, 478 U.S. 265, 286 (1986) (citation omitted). Therefore, a complaint should be dismissed pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure where it fails to plead enough facts to demonstrate a plausible entitlement to relief. See Iqbal, 129 S. Ct. at 1949.

Applying this standard, as explained more fully below, plaintiff's amended Complaint fails to state a claim that is plausible on its face and therefore must be dismissed.

**B.     Plaintiff's Allegations of § 1981 Retaliation Fail to State a Claim Upon Which Relief Can Be Granted**

Section 1981 provides, that "all persons within the jurisdiction of the United States shall have the same right . . . the make and enforce contracts . . . as is enjoyed by white citizens." 42 U.S.C. § 1981(a). To support an employment discrimination claim under § 1981, a plaintiff must allege that he is a member of a racial minority, and that he was discriminated against within a particular group of activities set forth in the statute. See Mian v. Donaldson, Lufkin & Jenrette Securities Corporation, 7 F.3d 1085, 1087 (2d Cir. 1993). Retaliation claims, on the other hand, are cognizable for both racial minorities and non-minorities under § 1981, where the adverse employment action is alleged to have occurred because of his or her efforts to vindicate the rights of racial minorities. See DeMatties v. Eastman Kodak Co., 511 F.2d 306, 312 (2d Cir. 1975). "Essential to an action under Section 1981 are allegations that the

defendants' acts were purposefully discriminatory and racially motivated." Albert v. Carovano, 851 F.2d 561 (2d Cir. 1988).

In support of her § 1981 retaliation claim, plaintiff asserts that she was terminated from her Executive Director position with the CCRB because she objected to Emery's proposed investigative process, i.e., determining the credibility of a complainant without conducting an investigation, because the proposed method of investigation would have "an extremely disparate impact on minorities in New York City." Ex. A at ¶¶45-46. Section 1981, however, only prohibits purposeful discrimination. It does not prohibit disparate impact discrimination. General Building Contractors Assn. v. Pennsylvania United Engineers and Constructors, Inc., 458 U.S. 375, 388-91 (1982). Here, plaintiff provides no support for her contention that Emery's proposed investigative process would intentionally violate the rights of complainants who are racial minorities. Even assuming that Emery had proposed the investigatory process alleged by plaintiff and such process might have a disparate impact on racial minorities, it is insufficient to maintain a claim under § 1981. Plaintiff's allegations are entirely conclusory and unsupported by facts sufficient to lead to a conclusion that any change to the investigatory process proposed by Emery was motivated by racial animus. See Albert v. Carovano, 851 F.2d 561, 572 (2d Cir. 1988); see also Hall v. New York Hospital, 2003 U.S. Dist. LEXIS 22039 (S.D.N.Y. December 5, 2003). In fact, plaintiff's allegations support nothing more than a conclusion that plaintiff had a policy disagreement with her employer.

Consequently, plaintiff's § 1981 retaliation claims should be dismissed.

**C.      Plaintiff Fails to State a Claim for Retaliation Under Title VII[3]**

To state a retaliation claim under Title VII, a plaintiff must show: "(1) that she was engaged in protected activity by opposing a practice made unlawful by Title VII; (2) that the employer was aware of that activity; (3) that she suffered adverse employment action; and (4) that there was a causal connection between the protected activity and the adverse action." Galdieri-Ambrosini, 136 F.3d at 292 (citing Reed v. A.W. Lawrence & Co., 95 F.3d 1170, 1178 (2d Cir. 1996)).   In her amended Complaint, plaintiff claims the she engaged in protected activity when she complained of race and sex discrimination, and that because of those complaints, she was terminated from her employment.   As illustrated below, plaintiff fails to plead enough facts to demonstrate a plausible entitlement to relief.

(i)      Plaintiff's Complaint of Disparate Impact Race Discrimination Did  Not Constitute "Protected Activity" For Purposes Of A Retaliation Claim Under  Title VII

Plaintiff claims that she unlawfully terminated "for making protected complaints concerning racially discriminatory practices."   Ex. A at ¶¶ 82, 87, 95.   Specifically, plaintiff alleges that she engaged in activity protected under Title VII when she opposed a proposed investigative method, which if implemented, she believed would have a disparate impact on minorities filing complaints of police misconduct.   Id. at ¶¶ 45-46.   Accepting plaintiff's allegations as true, as a matter of law, plaintiff cannot demonstrate entitlement to relief under Title VII's anti-retaliation provision.

---

[3] Plaintiff's Title VII claims against defendants Taylor and Emery should be dismissed, since Title VII allows only a cause of action against an "employer."  See Wrighten v. Glowski, 232 F.3d 119, 120 (2d Cir. 2000) (per curium); see also Martin v. Chemical Bank, 1997 U.S. App. LEXIS 32022 at * 8-9 (2d Cir. 1997).  It is well-settled that the definition of the term "employer" is limited to the entity that employs the plaintiff.  An "employer" is not construed to mean a supervisor or other agent of the entity that employs the plaintiff.  See, Tomka v. Seiler, 66 F.3d 1295, 1317 (2d Cir. 1995).  Therefore, only the employer, not individual employees, is the proper defendant in a Title VII action.  Id.

To state a retaliation claim under Title VII, plaintiff must show that she engaged in protected activity. The "protected activity" element of plaintiff's case turns upon whether she has protested an "unlawful employment practice," within the meaning of Title VII. See Wimmer v. Suffolk County Police Dep't., 176 F.3d 125, 134-136 (2d Cir.), cert. denied, 528 U.S. 964 (1999). The practice complained of need not necessarily be illegal under Title VII; a cause of action is stated so long as plaintiff possessed a "good faith, reasonable belief that the underlying challenged actions of the employer violated the law." Manoharan v. Columbia College of Physicians and Surgeons, 842 F.2d 590, 593 (2d Cir. 1988).

In Wimmer, the Second Circuit held that neither the "unlawful practice" nor the "good faith belief" requirement was satisfied where the practice complained of was not directed at employees but, instead, was directed toward third parties who were not in any employment relationship with the defendant. Wimmer, 176 F.3d at 135-36. This is because acts of discrimination against private individuals, who are not in an employment relationship with the person complained about, are not within the area of unlawful employment practices prohibited by Title VII. Thus, a claim of retaliation is "not cognizable under Title VII because [the] opposition was not directed at an unlawful employment practice of [the] employer." Id., citing, Little v. United Technologies, 103 F.3d 956, 959-60 (11th Cir. 1997), quoting, Silver v. KCA, Inc., 586 F.2d 138, 141 (9th Cir. 1978) ("the specific evil at which Title VII was directed was not the eradication of all discrimination by private individuals, undesirable though that is, but the eradication of discrimination by employers against employees").

Here, plaintiff's opposition forming the basis of the retaliation complaint was not an allegation that an employee was being discriminated against by an employer, but instead an allegation that a proposed investigative method would have a racially disparate impact on a third-

party, i.e., individual CCRB complainants. There are no facts alleged that any of these individuals had an employment relationship with the plaintiff or any of the defendants. Therefore, any disparate impact discrimination as a result of his proposed investigative methods would not constitute unlawful action by an employer, and would not, as a matter of law, fall within the protections of Title VII.

> (ii) Plaintiff's Complaints of Sex Discrimination Were Not Made In Good Faith And Did Not Constitute "Protected Activity" For Purposes Of A Retaliation Claim Under Title VII

Plaintiff also alleges that she was retaliated against and unlawfully terminated for (1) reporting allegations of sexual harassment against Taylor that occurred prior to her appointment as Executive Director of the CCRB and were previously reported; and for (2) reporting a sexually inappropriate email sent by Taylor during the time she was the Executive Director of CCRB that was brought her attention by another CCRB employee. The facts, however, negate any plausible inference that plaintiff had a good faith reasonable belief that she was opposing discrimination.

Although a cause of action for retaliation is stated so long as plaintiff possessed a "good faith, reasonable belief that the underlying challenged actions of the employer violated the law," see Kelly v. Howard I. Shapiro & Assocs. Consulting Eng, P.C., et al., 716 F.3d 10, 14 (2d Cir. 2014), "mere subjective good faith belief is insufficient[;] the belief must be reasonable and characterized by *objective* good faith." Kelly, 716 F.3d at 16 (quotation omitted and emphasis in original). The reasonableness of the plaintiff's belief is assessed in light of the totality of the circumstances, and "[a] plaintiff's belief on this point is not reasonable simply because he or she complains of something that appears to be discrimination in some form." Id. at 14.

Applying the above, it is not plausible that plaintiff's actions in sending the April 11, 2014 and May 6, 2014 emails to Fisher regarding prior harassment complaints made against Taylor were made in a "good faith" belief that the prior alleged conduct violated Title VII. First, the incidents of alleged sexual harassment reported by plaintiff occurred two years prior to her employment with the CCRB. Next, plaintiff's April 11, 2014 communication to Fisher clearly indicates that her report of the prior incident allegedly occurring in September 2011 was made not in opposition to any unlawful activity, but "for guidance" in determining her "obligations as Executive Director," including whether she should take action against the CCRB's EEO officers. Indeed, Fisher's response was to offer to meet with her to provide guidance on her "broader obligations under the Citywide EEO Policy and charter. Notably, Fisher's response includes the observation that the issue raised in the memo did not seem to be an EEO matter. Ex. D. Similarly, plaintiff's May 6, 2014 email to Fisher fails to demonstrate that plaintiff "opposed" unlawful conduct and is instead administrative in nature, as plaintiff is merely providing Fisher with information related to another EEO complaint that was resolved through mediation in June 2011. Ex. E. Because there are no facts alleged that her reports to Fisher were intended to indicate, or in any way indicated, that the reports were being made in opposition to sexual harassment, plaintiff has failed to demonstrate that her complaints to Fisher were made in good faith sufficient to establish that she engaged in protected activity.

With respect to Taylor's inappropriate statement in the email to the CCRB employee which was then sent by email to another CCRB employee, plaintiff pleads no set of facts to infer that she had a good faith belief that Taylor's sexually inappropriate statement was objectionable to the person to whom Taylor sent it. Absent from the Complaint are allegations that either employee or plaintiff found the statement offensive or objectionable. Ex. A ¶¶ 25-26;

Ex. E.  In fact, the CCRB employee who forwarded Taylor's statement to plaintiff benignly refers to the comment as "the city council designee's original remark."  Ex. F.

Regardless, no reasonable person could have believed that Taylor's single statement alone, as described by plaintiff, violated Title VII's prohibition on gender-based discrimination and/or harassment.  See Clark Cnty. Sch. Dist. v. Breeden, 532 U.S. 268, 271 (2001) (reversing denial of summary judgment where plaintiff complained that she was exposed to a sexually explicit comment on one occasion because "[n]o reasonable person could have believed that the single incident . . . violated Title VII's standard"); Chenette v. Kenneth Cole Prods., Inc., 345 F. App'x 615, 619 (2d Cir. 2009) (affirming grant of summary judgment on retaliation claim where only one incident complained of by plaintiff (her female supervisor having kissed her on the lips) had a sexual component and this one incident could not "reasonably amount to 'sexual harassment' in violation of Title VII").  While many may find Taylor's statement boorish, a reasonable person would not find that his statement rises to the level of actionable conduct.

In any event, even if this Court assumes, for the purposes of this motion, that plaintiff engaged in protected activity when she reported the allegations of sexual harassment against Taylor and Taylor's sexually inappropriate statement, plaintiff has not alleged any facts to establish a causal connection between her protected activity and her termination.  The unanimous Board decision recommending termination of plaintiff occurred on October 2, 2014.  Plaintiff's alleged protected activity occurred, at the latest, in early May 2014 – five months prior to the Board's decision to terminate her employment and more than two months before Emery was appointed chair of the CCRB.  Moreover, even if the Court were to assume that plaintiff suffered retaliatory treatment when Emery demanded plaintiff's resignation a month earlier on

September 9, 2014, the four month passage of time between her alleged protected activity[4] and Emery's threats of termination does not support an inference of a causal connection where the alleged retaliatory action and the protected activity are not "very close" in time, and the amended Complaint contains no set of facts to suggest that Emery even knew of the activity plaintiff claims to be protected by Title VII before he told plaintiff that he wanted a new Executive Director. Nor is there any evidence that plaintiff suffered any unfavorable treatment culminating in her termination. Hollander v. American Cyanamid Co., 895 F.2d 80, 85-86 (2d Cir. 1990) (concluding that even a three and one-half month interval between protected activity and alleged retaliation may be insufficient to establish causal connection where there is no other evidence that tends to show a retaliatory motive); Guzman v. News Corp, NYP Holdings, Inc., et al., 2013 U.S. Dist. LEXIS 155026 at *61-62 (S.D.N.Y. October 28, 2013) (causal connection found despite seven month gap between protected activity and termination where facts established that plaintiff suffered unfavorable treatment prior to her termination).

For the reasons set forth above, plaintiff fails to state a claim of retaliation under Title VII.

---

[4] Plaintiff's complaints of "a pattern of negative treatment against women exists at the CCRB," to Maya Wiley and Chloe Drew were made after Emery demanded her resignation, and as such are not causally connected to her October 2014 termination. Irrespective of the existence of a causal connection, plaintiff's generalized complaints of "negative treatment" are not protected activity where the employer "could not reasonably have understood that she was complaining of 'conduct prohibited by Title VII.'" Bowen-Hooks v. City of New York, et al., 13 F. Supp. 3d 179, 224 (E.D.N.Y. 2014) quoting Galderi-Ambrosini v. Nat'l Realty & Dev. Corp., 136 F.3d 276, 292 (2d Cir. 1998).

## POINT II

## THE COURT SHOULD DECLINE EXERCISING SUPPLEMENTAL JURISDICTION OVER ANY REMAINING STATE LAW CLAIMS

A District Court, in its discretion, may "decline to exercise supplemental jurisdiction over state law claims if it has dismissed all federal claims." Tops Markets, Inc. v. Quality Markets, 142 F.3d 90, 103 (2d Cir. 1998); see Giordano v. City of New York, 274 F.3d 740, 754 (2d Cir. 2001); 28 U.S.C. § 1367 (c) (3). In exercising its discretion, "a federal court should consider and weigh in each case, and at every stage of the litigation, the values of judicial economy, convenience, fairness, and comity . . . ." Carnegie-Mellon University v. Cohill, 484 U.S. 343, 350 (1988); see United Mine Workers v. Gibbs, 383 U.S. 715 (1966). "When the balance of these factors indicates that a case properly belongs in state court, as when the federal-law claims have dropped out of the lawsuit in its early stages and only state-law claims remain, the federal court should decline the exercise of jurisdiction by dismissing the case without prejudice." Carnegie-Mellon, 484 U.S. at 350. While this does not establish an ironbound rule, the usual result is to dismiss all pendent state claims when all federal claims have been disposed of before trial. See id. at 350, n. 7. Thus, upon dismissal of plaintiff's federal claims, the Court should dismiss the remaining state law claims.

**A. Should The Court Exercise Supplemental Jurisdiction Over Plaintiff's State Law Claims, These Claims Must Also Be Dismissed As Plaintiff Has Not Demonstrated That She Is Entitled to Relief**

        (i)  Plaintiff's SHRL, CHRL, And Breach of Contract Claims Are Barred By The Election Of Remedies Doctrine

Because plaintiff has elected to assert a claim pursuant to Civil Service Law § 75-b, she has triggered the election of remedies provision set forth in Labor Law § 740(7), and thus, her remaining SHRL, CHRL, and breach of contract claims are barred. "[T]he institution of an

action in accordance with this section shall be deemed a waiver of the rights and remedies available under any other contract, collective bargaining agreement, law, rule or regulation or under the common law."  N.Y. Labor Law § 740 (7); see Freese v Willa, 89 A.D.3d 795, 796 (2d Dep't 2011) ("Since the plaintiff asserted a cause of action pursuant to Labor Law § 740, '[she] waived other causes of action relating to the alleged retaliatory [action].'") (quoting Deshpande v. TJH Med. Servs., P.C., 52 A.D.3d 648 (2d Dep't 2008)).  See also Rigle v. County of Onondaga, 267 A.D.2d 1088, 1089 (4th Dep't 1999) ("[B]y commencing actions pursuant to Civil Service Law § 75-b, Rigle and Sawyer are barred from asserting any other State law cause of action related to the alleged retaliatory discharges.") (citation omitted).  As such, plaintiff is precluded from proceeding with her SHRL, CHRL, and breach of contract claims.

       (ii) Plaintiff Has Failed to Demonstrate That She is Entitled To Relief Under Civil Service Law Section 75-b[5]

In order to state a claim under § 75-b, a plaintiff must allege "(1) an adverse personnel action; (2) disclosure of information to a governmental body (a) regarding a violation of a law, rule, or regulation that endangers public health or safety, or (b) which she reasonably believes to be true and which she reasonably believes constitutes an improper governmental actions; and (3) causal connection between the disclosure and the adverse personnel action."  Burns v. Cook, 458 F. Supp. 2d 29, 44 (N.D.N.Y. 2006); see N.Y. Civ. Serv. Law § 75-b(2)(a).

---

[5] As a matter of law, plaintiff's claims against Emery and Taylor under § 75-b should be dismissed.  Public employees, in their individual capacities, do not fall within the class of defendants specified by the statute.  See Kirwin v. New York State Office of Mental Health, 665 F. Supp. 1034, 1039 (E.D.N.Y. 1987).  Further, "claims against municipal officials in their official capacities are really claims against the municipality and, thus, are redundant when the municipality is also named as a defendant."  Wallikas v. Harder, 67 F. Supp. 2d 82-83 (N.D.N.Y. 1999); see also Brown v. City of Syracuse, No. 5:01-CV-1523, 2008 WL 5451020, *2 (N.D.N.Y. Dec. 31, 2008) (finding that plaintiff's claims against the defendant in his official capacity were redundant because plaintiff also sued the city).

As an initial matter, because plaintiff does not allege that defendants' conduct posed a danger to public health or safety, she is not entitled to relief pursuant to § 75-b (2)(a) (i).

Turning to whether plaintiff is entitled to relief under § 75-b(2)(a)(ii), plaintiff must plead that she disclosed a violation that she reasonably believed to be true and which she reasonably believed constituted an improper governmental action. The term "improper governmental action" under § 75-b (2)(a)(ii) refers to "any action by a public employer or employee, or an agent" thereof, "which is undertaken in the performance of [his or her]official duties ... and which is in violation of any federal, state, or local law, rule or regulation" (§ 75–b [2][a] ). In whistleblower claims brought pursuant to other statutes, the Second Circuit Court of Appeals has determined that a "reasonable belief contains both subjective and objective components." (citation omitted). A plaintiff must "show not only that he believed that the conduct constituted a violation, but also that a reasonable person in his position would have believed that the conduct constituted a violation." Nielsen v. AECOM Tech. Corp., 762 F.3d 214, 221 (2d Cir. 2014) (quoting Livingston v. Wyeth, Inc., 520 F.3d 344, 352 (4th Cir. 2008)). Therefore, to be entitled to relief under § 75-b, plaintiff must have demonstrated in the pleadings that a reasonable person would have believed that the actions she complained of constituted "improper governmental action." For the reasons below, plaintiff has not met this threshold.

As argued above, plaintiff could not have reasonably believed that her alleged complaints of race discrimination and sexual harassment constituted a violation of a law, rule, or regulation required to state a claim pursuant to § 75-b. Since the language of the statute itself requires that the belief be a "reasonable" one, these complaints cannot be found to be "improper governmental action" as a matter of law. Id. at 352.

Next, with respect to plaintiff's allegations that Emery (1) suggested that the CCRB conceal important statistics regarding "stop and frisk" stops in New York City by excluding them from the mid-year report, (2) suggested that the CCRB no longer accept and investigate "stop and frisk" complaints, (3) proposed a discriminatory investigative process, and (4) colluded with the NYPD and failed to conduct himself in an "impartial" and "independent" manner, no reasonable person could believe that the alleged conduct was improper or in violation of any law, rule, or regulation, where no actual conduct is alleged. Ex. A at ¶¶ 40-43, 47-53. Under Rule 12(b)(6) a court may neither (i) "'assume that the [Plaintiff] can prove facts that [he] has not alleged,' nor (ii) "accept as true a legal conclusion couched as a factual allegation." Elec. Comm. Corp., 129 F.3d at 243; Papasan, 478 U.S. at 286. The New York City Charter makes clear that only the Board, and not Emery alone, can promulgate rules of procedure regarding investigations, establish investigative panels, and make findings and recommendations for the police commissioner, among other duties contained in the enabling statute. Ex. G. Here, the amended Complaint is devoid of any facts to demonstrate that Emery's suggestions were transformed by Emery or the Board into action. Without facts to demonstrate that a violation actually occurred, plaintiff has not demonstrated that she is entitled to relief under § 75-b.

Accordingly, plaintiff's § 75-b claim should be dismissed.

## CONCLUSION

**WHEREFORE,** Defendants respectfully request that the amended Complaint be dismissed and that Defendants be granted costs, fees, and disbursements together with such other and further relief as this Court deems just and proper.

Dated:      New York, New York
              February 9, 2015

                                Respectfully Submitted,

                                ZACHARY W. CARTER
                                Corporation Counsel of the City of New York
                                Attorney for Defendants
                                100 Church Street, Room 2-124
                                New York, New York 10007
                                (212) 356-2461
                                dcanfiel@law.nyc.gov

By:    **ECF**        **/s/**                  
                              Donna A. Canfield
                              Assistant Corporation Counsel