UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------X
                                                      :
TRACY CATAPANO-FOX,                                   :
                                                      :
                                    Plaintiff,        :
                                                      :
                    v.                                :
                                                      :
CITY OF NEW YORK, *et al.*,                           :
                                                      :
                                    Defendants.       :
                                                      :
------------------------------------------------------X

```
USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: June 11, 2015
```

14 Civ. 8036 (KPF)

OPINION AND ORDER

KATHERINE POLK FAILLA, District Judge:

Plaintiff Tracy Catapano-Fox brings this action against the City of New York and against Richard Emery and Bishop Mitchell Taylor in their personal and official capacities (collectively, "Defendants") for termination of her employment at the Civilian Complaint Review Board (the "CCRB") and other alleged retaliation in violation of 42 U.S.C. § 1981, Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e to 2000e-17, the New York State Human Rights Law (the "NYSHRL"), N.Y. Exec. Law §§ 290 to 301, the New York City Human Rights Law (the "NYCHRL"), N.Y.C. Admin. Code §§ 8-101 to 8-131, and New York Civil Service Law § 75-b ("Section 75-b"), as well as in breach of her contractual rights under state law. Defendants move to dismiss this action for failure to state a claim under Fed. R. Civ. P. 12(b)(6). For the reasons set forth in this Opinion, the motion to dismiss is granted with respect to Plaintiff's Section 1981 and breach of contract claims, granted with respect to Plaintiff's Title VII and Section 75-b claims as against Defendants Emery and Taylor, and denied in all other respects.

## BACKGROUND[1]

### A.    Factual Background

Plaintiff was employed between June 2013 and October 6, 2014, as

Executive Director of the CCRB, which was created to address misconduct by

---

[1]    The facts contained in this Opinion are drawn from Plaintiff's Amended Complaint ("Compl." (Dkt. #11)).  Defendants also submit as exhibits to their motion to dismiss a number of emails, which they argue undercut Plaintiff's factual allegations and should be incorporated by reference.  (*See* Canfield Decl. Ex. D, E, F; Def. Reply 1-3).  The Court declines to incorporate these exhibits, but does incorporate Exhibits C and G because these documents are explicitly referenced in the Complaint.

"In considering a motion to dismiss for failure to state a claim pursuant to Rule 12(b)(6), a district court may consider the facts alleged in the complaint, documents attached to the complaint as exhibits, and documents incorporated by reference in the complaint." *DiFolco* v. *MSNBC Cable L.L.C.*, 622 F.3d 104, 111 (2d Cir. 2010).  "Even where a document is not incorporated by reference, the court may nevertheless consider it where the complaint 'relies heavily upon its terms and effect,' which renders the document 'integral' to the complaint." *Chambers* v. *Time Warner, Inc.*, 282 F.3d 147, 153 (2d Cir. 2002) (quoting *Int'l Audiotext Network, Inc.* v. *Am. Tel. & Tel. Co.*, 62 F.3d 69, 72 (2d Cir. 1995) (per curiam)).  "[A] plaintiff's *reliance* on the terms and effects of a document in drafting the complaint is a necessary prerequisite to the court's consideration of the document on a dismissal motion; mere notice or possession is not enough." *Id.* (emphasis in original).  Moreover, "even if a document is 'integral' to the complaint, it must be clear on the record that no dispute exists regarding the authenticity or accuracy of the document.  It must also be clear that there exist no material disputed issues of fact regarding the relevance of the document." *Faulkner* v. *Beer*, 463 F.3d 130, 134 (2d Cir. 2006) (internal citations omitted).

Incorporation by reference is generally reserved for cases in which a document or exhibit forms the heart of the claim: for example, a contract in a contractual dispute or a rendering of a copyrighted work in an infringement dispute.  *See, e.g.*, *Int'l Audiotext*, 62 F.3d at 72 (contract); *BWP Media USA, Inc.* v. *Gossip Cop Media, LLC*, No. 13 Civ. 7574 (KPF), 2015 WL 321863, at *3 (S.D.N.Y. Jan. 26, 2015) (screenshots of allegedly infringing webpages).  Here, by contrast, Defendants seek to introduce emails that they believe form the entirety of the complaints of discrimination that Plaintiff alleges she made.  Yet without the benefit of discovery, the Court would have to rely on Defendants' assertion that the emails are produced in context and form the entirety of the alleged protected conduct.  Such reliance would properly require the Court to convert the motion to dismiss to a Rule 56 motion for summary judgment, and allow Plaintiff "a reasonable opportunity to present all the material that is pertinent to the motion." Fed. R. Civ. P. 12(d); *see also Faulkner*, 463 F.3d at 134-35 & n.1.  Because the Court cannot conclude at this stage that the communications included at Exhibits D, E, and F are the entirety of those referenced in the Complaint, it declines to consider these exhibits.

On the other hand, Plaintiff acknowledges that Exhibit C to the Canfield Declaration is Marcos Soler's account of a prior incident, which account is specifically referenced and discussed in Paragraph 22 of the Complaint, or that Exhibit G is the letter putting

the New York City Police Department (the "NYPD").  (Compl. ¶¶ 1, 2, 14).

Plaintiff alleges that, during her employment, she made complaints regarding

the sexually inappropriate behavior of Defendant Bishop Taylor, a CCRB board

member, and regarding a number of policy decisions or positions taken by

Defendant Richard Emery, before being retaliated against and ultimately fired

for these ostensibly protected activities.

### 1.    Sexual Harassment and Discrimination Complaints

In March 2014, Plaintiff became aware of an earlier incident between

Taylor and a female CCRB employee.  (Compl. ¶¶ 18-19).  According to the

Complaint, the employee explained that Taylor had sexually harassed her; after

the employee had reported the incident to Plaintiff's predecessor as Executive

Director, the prior Executive Director asked her, "what, you've never been hit

on before?"  (*Id.* at ¶¶ 19-20).  Marcos Soler, the CCRB's Equal Employment

Opportunity ("EEO") Officer, who was present that evening, then told the

employee she would be fired if she reported the unlawful conduct.  (*Id.* at ¶ 21).

Soler wrote up a report of the incident between Taylor and the employee, based

upon his personal observations that evening; the report is dated September 20,

2011, though the report describes events taking place from the evening of

September 20, 2011, to the following morning.  (Canfield Decl. Ex. C).  Plaintiff

_____

Defendants on notice, as discussed in Paragraphs 68 to 70 of the Complaint.
Accordingly, the Court incorporates those exhibits by reference.

For convenience, the parties' memoranda of law are cited as "Def. Br." (Dkt. #17), "Pl.
Opp." (Dkt. #21), and "Def. Reply" (Dkt. #25).

maintains that the account was written at least a year and a half after the incident, and modified even more recently.  (Compl. ¶ 22).

Plaintiff reported the incident to the New York City Law Department and to the New York City Office of Citywide Diversity and Equal Opportunity Employment (the "NYC EEO Department").  (Compl. ¶ 23).  She was subsequently interviewed by New York City's Chief EEO and Diversity Officer in April 2014, during which interview she also reported an incident in which Taylor had told a different female CCRB employee, "You're hot stuff, baby."  (*Id.* at ¶ 24).  Shortly thereafter, in May 2014, Taylor characterized a citizen complaint by stating in an email, "This is not a strip search case.  This is a dick case."  (*Id.* at ¶ 25).  This email was forwarded to another female CCRB employee, who complained to Plaintiff; Plaintiff then reported the email to two members of the CCRB Board's executive committee, as well as the NYC EEO Department.  (*Id.* at ¶¶ 26-27).  Taylor was not disciplined, and neither the CCRB nor the NYC EEO Department followed up on Plaintiff's complaints.  (*Id.* at ¶¶ 24, 28).  Plaintiff subsequently complained on September 10, 2014, to two persons, whose positions are not identified in the Complaint, that "a pattern of negative treatment against women exists at the CCRB."  (*Id.* at ¶ 59).

### 2.    CCRB Procedure and Racial Bias Complaints

In addition to her complaints about Taylor and the CCRB's treatment of its female employees, Plaintiff also had numerous disagreements with Emery and Taylor regarding various policy decisions that Plaintiff believed to be in violation of the CCRB's rules and regulations, and that in her estimation would

have a discriminatory impact on minority complainants.  Plaintiff made numerous complaints to Emery and the Board about his attempt to have the CCRB stop accepting or substantiating "stop and frisk" complaints; advocated publishing a report on the frequency of "stop and frisk" cases; and objected to the exclusion of "stop and frisk" statistics from the CCRB's 2014 mid-year report.  (Compl. ¶¶ 40-43).  Plaintiff additionally objected to Emery's failure "to conduct himself in an 'impartial' and 'independent' manner with regard to challenging the NYPD" on a number of incidents (*id.* at ¶¶ 48-50), and to the publication of inaccurate statistics in various CCRB reports (*id.* at ¶¶ 51-54).

Plaintiff also objected to Emery's proposal to have CCRB investigative employees make a determination as to a complainant's credibility before conducting an investigation.  (Compl. ¶ 44).  According to the Complaint, Emery reasoned that "[a] doctor is much more credible than someone with a criminal history."  (*Id.* at ¶ 45).  Plaintiff objected on the grounds that "the proposed method of investigation would have an extremely disparate impact on minorities in New York City," and notes in her Complaint that two other CCRB employees, both African-American, also complained that the proposed method was discriminatory.  (*Id.* at ¶ 46).

### 3.   Retaliation Against Plaintiff

Plaintiff alleges a number of retaliatory actions taken after her complaints about Taylor's behavior and Emery's proposed and effected policies. With regard to Taylor, Plaintiff alleges that he "became extremely hostile," to the point that other Board members asked him "to cease his increasingly

aggressive behavior towards" Plaintiff.  (Compl. ¶ 33).  Taylor also falsely accused Plaintiff of improperly promoting a close friend within the CCRB, which promotion Plaintiff maintains was entirely proper.  (*Id.* at ¶ 32).  Plaintiff complained of these actions to an official in the New York City Office of the Mayor in June 2014.  (*Id.* at ¶ 34).  Plaintiff also alludes to "negative feedback" due to retaliation, but offers no further details.  (*Id.* at ¶ 36).

Plaintiff alleges additional retaliation by Emery with more detail. According to the Complaint, Emery "demanded that Ms. Fox resign or 'suffer the consequences,' and threatened to 'stack the Board' to ensure her termination."  (Compl. ¶ 56).  Emery also falsely informed the Mayor's office and the Board — on September 9 and September 11, 2014, respectively — that Plaintiff had agreed to leave her position as Executive Director.  (*Id.* at ¶¶ 56, 60).  Plaintiff alleges that, in part due to Emery's conduct described in the Complaint, the Board on September 11, 2014, scheduled a September 15 meeting for the purpose of issuing a vote of "no confidence" in Emery.  (*Id.* at ¶ 61).  The following day, September 12, 2014, Emery posted Plaintiff's position as Executive Director without her consent.  (*Id.* at ¶ 62).  According to the Complaint, on September 14, 2014, Emery misinformed the press that the purpose of the September 15 Board meeting was to terminate Plaintiff, and subsequently cancelled the meeting, citing fabricated concerns over timing. (*Id.* at ¶¶ 63-64).

On September 26, 2014, Plaintiff sent a letter (Canfield Decl. Ex. G), via counsel, to the CCRB, Emery, the Office of the Mayor, and the Law

Department, detailing Plaintiff's concerns, consisting largely of the facts within the Complaint.  (Compl. ¶ 68).  The Complaint alleges that Emery proceeded to force the resignation of one Board member and arrange the appointment of four new Board members in advance of an October 2, 2014 Board meeting. (*Id.* at ¶¶ 70-74).  On October 3, 2014, the Board demanded Plaintiff's resignation; Plaintiff refused, and on October 6, 2014, was fired.  (*Id.* at ¶ 74).

## B.    Procedural Background

On October 6, 2014, Plaintiff filed the instant action, alleging retaliation in violation of 42 U.S.C. § 1981, the NYSHRL, the NYCHRL, and NYC Civil Service Law § 75-b; Taylor and Emery's aiding and abetting of retaliation in violation of the NYSHRL and the NYCHRL; and breach of contract.  (Dkt. #1). After a conference to discuss Defendants' contemplated motion to dismiss, Plaintiff filed her Amended Complaint on January 9, 2015; among other changes, Plaintiff added a claim of unlawful retaliation under Title VII.  (Dkt. #11).  Defendants moved to dismiss the Amended Complaint on February 9, 2015.  (Dkt. #15).  Plaintiff filed her opposition on March 6, 2015 (Dkt. #21), and the briefing was complete upon the filing of Defendants' reply on March 27, 2015 (Dkt. #25).

On request of Plaintiff, the Court allowed discovery to continue during the pendency of the motion to dismiss.  (Dkt. #14).  The Court addresses certain discovery disputes that have arisen (Dkt. #27, 28) at the conclusion of its Opinion and Order.

## DISCUSSION

**A.    Standard of Law**

**1.    Motions to Dismiss Generally**

When considering a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), a court should "draw all reasonable inferences in Plaintiff['s] favor, assume all well-pleaded factual allegations to be true, and determine whether they plausibly give rise to an entitlement to relief." *Faber* v. *Metro. Life Ins. Co.*, 648 F.3d 98, 104 (2d Cir. 2011) (internal quotation marks omitted). Thus, "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft* v. *Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp.* v. *Twombly*, 550 U.S. 544, 570 (2007)). "While *Twombly* does not require heightened fact pleading of specifics, it does require enough facts to 'nudge [a plaintiff's] claims across the line from conceivable to plausible.'" *In re Elevator Antitrust Litig.*, 502 F.3d 47, 50 (2d Cir. 2007) (quoting *Twombly*, 550 U.S. at 570). "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of entitlement to relief.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 557). Moreover, "the tenet that a court must accept a complaint's allegations as true is inapplicable to threadbare recitals of a cause of action's elements, supported by mere conclusory statements." *Iqbal*, 556 U.S. at 663.

### 2.    Motions to Dismiss Discrimination Claims

At summary judgment, retaliation claims under Title VII are analyzed pursuant to the three-part burden-shifting framework set forth by *McDonnell Douglas Corp.* v. *Green*, 411 U.S. 792 (1973).  "To establish a prima facie case of retaliation" under Title VII, Plaintiff "must show [i] that she participated in a protected activity[;] [ii] that she suffered an adverse employment action[;] and [iii] that there was a causal connection between her engaging in the protected activity and the adverse employment action."  *Gorzynski* v. *JetBlue Airways Corp.*, 596 F.3d 93, 110 (2d Cir. 2010).  Importantly, "[t]o prove that [a plaintiff] engaged in protected activity, the plaintiff need not establish that the conduct he opposed was in fact a violation of Title VII.  However, the plaintiff must demonstrate a 'good faith, reasonable belief that the underlying challenged actions of the employer violated the law.'"  *Manoharan* v. *Columbia Univ. Coll. of Physicians & Surgeons*, 842 F.2d 590, 593 (2d Cir. 1988) (quoting *Abel* v. *Bonfanti*, 625 F. Supp. 263, 267 (S.D.N.Y. 1985)).

By and large the same standards govern retaliation claims under Section 1981, *see Wright* v. *City of Syracuse*, — F. App'x —, 2015 WL 1727169, at *2 n.1 (2d Cir. Apr. 16, 2015) (summary order), and under the NYSHRL and NYCHRL, *see Digilov* v. *JPMorgan Chase Bank, N.A.*, No. 13 Civ. 975 (KPF), 2015 WL 685178, at *16 (S.D.N.Y. Feb. 18, 2015), though the definition under the NYCHRL of what constitutes an adverse employment action is somewhat broader, *see id.*  The Supreme Court has made clear, however, that to survive a motion to dismiss "a complaint in a discrimination lawsuit need not contain

9

specific facts establishing a prima facie case of discrimination under the framework set forth in *McDonnell Douglas*." *Twombly*, 550 U.S. at 569 (internal alteration omitted) (quoting *Swierkiewicz* v. *Sorema N. A.*, 534 U.S. 506, 508 (2002)).  The Second Circuit has recently affirmed that "*Swierkiewicz* has continuing viability, as modified by *Twombly* and *Iqbal*." *E.E.O.C.* v. *Port Auth. of N.Y. & N.J.*, 768 F.3d 247, 254 (2d Cir. 2014).  "As such ... while a discrimination complaint need not allege facts establishing each element of a prima facie case of discrimination to survive a motion to dismiss, it must at a minimum assert nonconclusory factual matter sufficient to 'nudge its claims across the line from conceivable to plausible to proceed.'"  *Id.* (internal alterations and citation omitted) (quoting *Iqbal*, 556 U.S. at 680).  "As a practical matter, however, while a plaintiff need not allege specific facts establishing a prima facie case of discrimination in order to withstand a motion to dismiss, the elements of a prima facie case often provide an outline of what is necessary to render a plaintiff's claims for relief plausible."  *Carter* v. *Verizon*, No. 13 Civ. 7579 (KPF), 2015 WL 247344, at *5 (S.D.N.Y. Jan. 20, 2015).

**B.    Analysis**

### 1.    The Motion to Dismiss Is Granted as to the Title VII Claims Against Defendants Taylor and Emery

"[I]ndividuals are not subject to liability under Title VII."  *Patterson* v. *County of Oneida*, 375 F.3d 206, 221 (2d Cir. 2004) (quoting *Wrighten* v. *Glowski*, 232 F.3d 119, 120 (2d Cir. 2000) (per curiam)).  Accordingly, Plaintiff's Title VII claims against Defendants Taylor and Emery are dismissed.

2. **The Motion to Dismiss Is Granted as to the Section 1981 Claims, and as to the Retaliation Claims Under Title VII, the NYSHRL, and the NYCHRL Insofar as They Are Based upon Complaints of Racial Discrimination**

Plaintiff alleges that she was retaliated against for complaining of racial discrimination in the form of CCRB practices that would have a discriminatory impact on minority complainants, in violation of Section 1981, Title VII, the NYSHRL, and the NYCHRL. (Compl. ¶¶ 77, 82, 87, 95).

"An individual engages in protected activity under § 1981 when she complains about or otherwise opposes conduct that she reasonably believes to have violated § 1981." *Gomez* v. *City of New York*, No. 12 Civ. 6409 (RJS), 2014 WL 4058700, at *6 (S.D.N.Y. Aug. 14, 2014) (internal quotation marks omitted). While it is well established that only purposeful, racially motivated discrimination — as opposed to activity that merely has a disparate impact on racial minorities — violates Section 1981, *see Albert* v. *Carovano*, 851 F.2d 561, 571-72 (2d Cir. 1988) (citing *General Bldg. Contractors Ass'n* v. *Pennsylvania*, 458 U.S. 375, 391 (1982); *Zemsky* v. *City of New York*, 821 F.2d 148, 150 (2d Cir. 1987), *cert. denied*, 484 U.S. 965 (1987)), Plaintiff argues that it remains reasonable for Plaintiff to believe that Taylor's proposed plan to evaluate the credibility of complainants violated Section 1981. That argument is unavailing, however: it is "essential" that a plaintiff alleging retaliation for seeking to vindicate the rights of racial minorities "that the defendants' acts

were purposefully discriminatory." *Santulli* v. *Russello*, 519 F. App'x 706, 710 (2d Cir. 2013) (summary order) (quoting *Albert*, 851 F.2d at 571).[2]

Plaintiff's claims under Title VII, the NYSHRL, and the NYCHRL fail both for this reason and for the additional reason that these statutes, unlike Section 1981, are targeted exclusively at the workplace. The Second Circuit has held that Title VII is targeted solely at workplace discrimination, and that "a complaint of retaliation for opposing discrimination by co-employees against non-employees" is therefore not cognizable under Title VII. *Wimmer* v. *Suffolk Cty. Police Dep't*, 176 F.3d 125, 135 (2d Cir. 1999). Accordingly, Plaintiff "could not have reasonably believed that [she] was opposing an employment practice because the evidence does not address racial discrimination in an employment practice." *Id.* at 136. Nor can Plaintiff revive the claim by alleging that the policy made minority employees disproportionately discomfited, as such a theory would transform Title VII from an employment statute into a corporate malfeasance statute wherever an employer employs a diverse workforce. While the NYCHRL's protections must be construed more broadly, *see Mihalik* v. *Credit Agricole Cheuvreux N. Am., Inc.*, 715 F.3d 102, 112 (2d Cir. 2013), the Court finds no support for the proposition that the NYCHRL was intended to extend protection against discrimination outside the workplace rather than within it.

---

[2]     Alternatively, Plaintiff argues that she has successfully pleaded purposeful racial discrimination by pleading the existence of "obvious" disparate impact. (Pl. Opp. 19). While the Court is aware that purposeful discrimination is difficult to prove absent discovery, Plaintiff's logic would eliminate *Albert*'s requirement that a plaintiff allege "that the defendants' acts were purposefully discriminatory." 851 F.2d at 571.

Accordingly, Plaintiff's retaliation claims based upon opposing racially discriminatory policies are dismissed.

### 3. The Motion to Dismiss Is Denied as to the Title VII, NYSHRL, and NYCHRL Claims Insofar as They Are Based upon Complaints of Gender Discrimination and Sexual Harassment

Defendants argue that Plaintiff's complaints regarding Taylor's prior incidents of sexual harassment were not protected activity because they were more akin to an inquiry into Plaintiff's own responsibilities than a complaint. (Def. Br. 13; Def. Reply 4-5). Defendants are correct,

> in the context of human resources managers, that to engage in protected activity, "the employee must step outside his or her role of representing the company and either file (or threaten to file) an action adverse to the employer, actively assist other employees in asserting [Title VII] rights, or otherwise engage in activities that reasonably could be perceived as directed towards the assertion of rights...."

*Ezuma* v. *City Univ. of N.Y.*, 665 F. Supp. 2d 116, 122 (E.D.N.Y. 2009) (alterations in original) (quoting *McKenzie* v. *Renberg's Inc.*, 94 F.3d 1478, 1486-87 (10th Cir. 1996)), *aff'd,* 367 F. App'x 178 (2d Cir. 2010) (summary order). However, the question of whether Plaintiff was acting in her capacity as Executive Director or as a complainant is inherently a factual one, requiring a detailed examination of her actions and job responsibilities. In arguing that her communications were not oppositional, Defendants rely heavily on communications that the Court has determined are not properly incorporated into the Complaint (*see supra* n.1). Within the four corners of the Complaint itself, it cannot be said that Plaintiff did not engage in protected activity.

13

Defendants next argue that even if Plaintiff's activity were protected, there is no causal nexus between her complaints against Taylor, which spanned from March 2014 to May 2014, and her firing, which occurred October 3, 2014.  With regard to Taylor as an individual,[3] however, Plaintiff alleges that Taylor began retaliating against her "immediately," by becoming "extremely hostile" and "increasingly aggressive," and by falsely accusing her of wrongdoing.  (Compl. ¶¶ 31-33).  While the Court notes that even "the NYCHRL is not a general civility code," *Mihalik*, 715 F.3d at 113, it must also bear in mind the Supreme Court's holding in *Swierkiewicz* that a Title VII complaint (and by extension certainly an NYSHRL or NYCHRL complaint) need not "contain specific facts establishing a prima facie case of discrimination under the framework set forth … in *McDonnell Douglas*," *Swierkiewicz*, 534 U.S. at 508.  Accordingly, with respect to Plaintiff's claims against Taylor for retaliation under the NYSHRL and the NYCHRL, the Plaintiff alleges nonconclusory factual matter sufficient to nudge her claims across the line from conceivable to plausible with regard to both retaliatory action and causal nexus.

Plaintiff's firing by the CCRB (allegedly orchestrated by Emery), conceded to be sufficiently retaliatory to invoke the protections of Title VII, the NYSHRL, and the NYCHRL, also demonstrates a sufficient causal nexus to survive a

---

[3]     While Taylor and Emery are not liable under Title VII, the NYSHRL and NYCHRL differ from Title VII in allowing individual liability, such that "an individual defendant may be held liable under the aiding and abetting provision of the NYSHRL if he 'actually participates in the conduct giving rise to a discrimination claim.'"  *Rojas* v. *Roman Catholic Diocese of Rochester*, 660 F.3d 98, 107 n.10 (2d Cir. 2011) (quoting *Tomka* v. *Seiler Corp.*, 66 F.3d 1295, 1313 (2d Cir. 1995)); *see also Feingold* v. *New York*, 366 F.3d 138, 158-59 (2d Cir. 2004) (noting same as to NYCHRL).

motion to dismiss.  Defendants point to the four-month gap between Plaintiff's
May 2014 forwarding of an inappropriate email and Emery's September 9,
2014 demand for her resignation.  It is true that when temporal proximity,
standing alone, is used to establish a causal connection, that temporal
proximity must be "very close."  *Clark Cnty. Sch. Dist.* v. *Breeden*, 532 U.S. 268,
273 (2001).  The Second Circuit, however, has repeatedly found intervals of
four months and longer sufficient to support a causal connection.  *See Summa*
v. *Hofstra Univ.*, 708 F.3d 115, 127-28 (2d Cir. 2013) (finding that a four-
month "temporal connection is enough, in and of itself, in this instance to
permit a reasonable jury to find causation," and collecting cases finding the
casual connection established with three-, four-, six-, and eight-month gaps).
Moreover, such cases have found four months to be sufficient temporal
proximity to establish a prima facie case under *McDonnell Douglas* at summary
judgment; under *Swierkiewicz*, at the pleading stage Plaintiff need not meet
even that standard.  While further discovery may establish that Plaintiff's
termination was due to her complaints of racial discrimination, her policy
disagreements with Emery, or even poor performance, the Complaint
sufficiently alleges that Plaintiff was terminated in retaliation for her
complaints about Taylor's sexual harassment, which is protected activity under
Title VII, the NYSHRL, and the NYCHRL.

### 4.     Plaintiff Fails to State a Claim for Breach of Contract

Plaintiff argues that her firing "violates her contractual rights pursuant
to the CCRB's Employee Manual and Code of Conduct [the 'Code of Conduct']

and the Citywide Employee Orientation Manual [the 'Orientation Manual']."
(Compl. ¶ 75).  According to the Complaint, the Code of Conduct provides that
"[t]he CCRB will not condone employees engaging in conduct that violates the
[EEO] policy, nor will it tolerate retaliation against any employee who
complains of sexual harassment or discrimination, or provides information to
the EE Office with respect to any such complaint"; the Orientation Manual
provides that "[i]t is … unlawful to retaliate against or harass any person for
filing an EEO complaint … or for cooperating in the investigation of an EEO
complaint.  The City of New York will not tolerate any such retaliation."  (*Id.*).

It is indeed possible for an employee to establish that policies contained
in an employee handbook are part of the employment contract, *see Marfia* v.
*T.C. Ziraat Bankasi*, 147 F.3d 83, 87-89 (2d Cir. 1998), though the New York
Court of Appeals has cautioned that "[r]outinely issued employee manuals,
handbooks and policy statements should not lightly be converted into binding
employment agreements," *Lobosco* v. *N.Y. Tel.*, 96 N.Y.2d 312, 317 (2001).  In
New York, a plaintiff claiming breach of contract under such circumstances
must "show that the employer made its employee aware of an express written
policy limiting the right of discharge and the employee detrimentally relied on
that policy in accepting employment."  *Id.* at 316.  Yet nothing in either
handbook, as alleged in the Complaint, purports to limit the CCRB's ability to
terminate an employee at will.  At most, it suggests that the CCRB will take
action against those who *do* retaliate, while leaving entirely open the possibility
that it will do so while allowing a retaliatory termination to stand.  Because

16

Plaintiff has failed to allege any limitation of her at-will employment expressed or implied in the handbooks, her claim for breach of contract is dismissed.

### 5.   Plaintiff's Title VII, NYSHRL, and NYCHRL Claims Are Not Dismissed Under the Election of Remedies Doctrine

Defendants argue that Plaintiff, by bringing claims under Section 75-b of the New York Civil Service Law, has forfeited her ability to seek relief under the NYSHRL and NYCHRL.  Section 75-b(2)(a) protects a public employee against retaliation for disclosing to a government body information "which the employee reasonably believes to be true and reasonably believes constitutes an improper governmental action."  Section 75-b(3)(c) provides that a such an employee, when not covered by a collective bargaining agreement mandating arbitration, "may commence an action in a court of competent jurisdiction under the same terms and conditions as set forth in article twenty-C of the labor law."  Article Twenty-C, codified as New York Labor Law § 740, provides,

> Nothing in this section shall be deemed to diminish the rights, privileges, or remedies of any employee under any other law or regulation or under any collective bargaining agreement or employment contract; except that *the institution of an action in accordance with this section shall be deemed a waiver of the rights and remedies available under any other contract, collective bargaining agreement, law, rule or regulation or under the common law.*

N.Y. Lab. Law § 740(7) (emphasis added).  Elsewhere, "law, rule, or regulation" is defined as including "any duly enacted statute or ordinance or any rule or regulation promulgated pursuant to any federal, state or local statute or ordinance."  *Id.* § 740(1)(c).  These interlocking provisions raise two questions: Is Section 740's election of remedies provision implicated by bringing an action

17

under Section 75-b?  And if so, how far does the waiver extend?  The Court,

noting the ambiguity in the first question,[4] declines to decide whether an

action under Section 75-b invokes Section 740's election of remedies provision,

instead concluding that, even if invoked, the provision does not extend to

Plaintiff's surviving claims under Title VII, the NYSHRL, and the NYCHRL.

As Judge Lynch has noted, the most literal reading of Section 740(7)

"would seem to provide that when an employee brings a whistleblower suit, *all*

concurrent or future lawsuits brought by that employee, in any capacity

whatsoever, are waived."  *Collette* v. *St. Luke's Roosevelt Hosp.*, 132 F. Supp. 2d

256, 262 (S.D.N.Y. 2001).  Because such a result would be absurd, and would

---

[4]   Plaintiff argues that although Section 75-b provides that an action should be brought "under the same terms and conditions as set forth in article twenty-C of the labor law," N.Y. Civ. Serv. Law § 75-b(3)(c), such an action is not instituted "in accordance with this section" as set forth in Section 740(7).  Defendants respond that Section 740's election of remedies provision is a "term[] [or] condition[]" set forth in Section 740, as contemplated by Section 75-b, and thus is applicable.

Unlike New York Labor Law § 741, which has been interpreted merely to invoke the cause of action created by Section 740(d) rather than contain an independent cause of action, *see Reddington* v. *Staten Island Univ. Hosp.*, 11 N.Y.3d 80 (2008), Section 75-b would appear to contain a distinct cause of action that must merely conform to the terms and conditions of a Section 740 cause of action, *see Castro* v. *City of New York*, 45 Misc. 3d 805, 813 (N.Y. Sup. Ct. 2014) ("Unlike Labor Law § 741, New York Civil Service Law § 75-b creates an express right of action, conferring the right to an aggrieved employee to bring an action in court.").  However, Section 740(7) uses the phrase "in accordance with" to delimit its scope.  This phrase might be broadly understood as meaning "in agreement with," *see Black's Law Dictionary* 20 (10th ed. 2014); *Garner's Dictionary of Legal Usage* 12 (3d ed. 2011), thus extending to actions that comply with its terms and conditions, like those under Section 75-b.  Alternatively it might be a narrower synonym for "pursuant to," *see Black's Law Dictionary* 1431; *Garner's Dictionary of Legal Usage* 737, and thus apply only to actions arising under Section 740.

The few New York appellate courts to address the question have adopted the former position and assumed that Section 740's election of remedies provision is applicable to actions under Section 75-b.  *See Frank* v. *State*, 86 A.D.3d 183, 187 (3rd Dep't 2011); *Rigle* v. *County of Onondaga*, 267 A.D.2d 1088, 1089 (4th Dep't 1999).  The Court declines to wade into this morass, as Section 740's election of remedies provision is best interpreted as not extending to claims under Title VII and its state and local analogues.

tend to chill rather than promote whistleblower actions under the New York Labor Law, *see id.* at 263, a number of state courts have held that the election of remedies provision relates only to actions arising out of the retaliatory discharge alleged in the Section 75-b complaint, *see Reddington* v. *Staten Island Univ. Hosp.*, 511 F.3d 126, 134 (2d Cir. 2007) (collecting cases). Yet even this construction would, in circumstances such as this case, potentially bring the election of remedies provision into conflict with federal antidiscrimination law, raising difficult constitutional questions. *See Collette*, 132 F. Supp. 2d at 265 (citing U.S. Const. Art. VI, cl. 2 (Supremacy Clause)). Accordingly, federal courts considering Section 740(7) have followed *Collette* and "generally interpret the waiver as applying 'only to rights and remedies concerning whistleblowing.'" *Reddington*, 511 F.3d at 134 (quoting *Collette*, 132 F. Supp. 2d at 274) (collecting cases); *see also Haight* v. *NYU Langone Med. Ctr., Inc.*, No. 13 Civ. 4993 (LGS), 2014 WL 2933190, at *19-21 (S.D.N.Y. June 27, 2014); *Hettler* v. *Entergy Enters., Inc.*, 15 F. Supp. 3d 447, 452-53 (S.D.N.Y. 2014); *Kramsky* v. *Chetrit Grp., LLC*, No. 10 Civ. 2638 (HB), 2010 WL 4628299, at *4-5 (S.D.N.Y. Nov. 16, 2010). These courts have found that commencement of a lawsuit under Section 75-does not waive retaliation claims under Title VII or under its state and local analogues. *See Collette*, 132 F. Supp. 2d at 274.

Following the courts within this District, the Court construes the waiver provision of Section 740(7) narrowly, and accordingly finds that Plaintiff's surviving claims under Title VII, the NYSHRL, and the NYCHRL are not precluded by election of remedies. The Court acknowledges that Plaintiff's

claims of breach of contract and retaliation for complaints of externally directed race discrimination would present closer cases, *see Kramsky*, 2010 WL 4628299, at *6, but those causes of action have been dismissed.

### 6. Plaintiff States a Claim for Retaliation Under Section 75-b

Plaintiff alleges that she was retaliated against for her good-faith complaints of conduct that violated several municipal laws, in violation of Section 75-b, which provides in relevant part that:

> A public employer shall not dismiss or take other disciplinary or other adverse personnel action against a public employee regarding the employee's employment because the employee discloses to a governmental body information: (i) regarding a violation of a law, rule or regulation which violation creates and presents a substantial and specific danger to the public health or safety; or (ii) which the employee reasonably believes to be true and reasonably believes constitutes an improper governmental action. "Improper governmental action" shall mean any action by a public employer or employee, or an agent of such employer or employee, which is undertaken in the performance of such agent's official duties, whether or not such action is within the scope of his employment, and which is in violation of any federal, state or local law, rule or regulation.

N.Y. Civ. Serv. Law § 75-b(2)(a).  Thus, in order for a plaintiff to state a claim under Section 75-b, she must allege:

> [i] an adverse personnel action; [ii] disclosure of information to a governmental body (a) regarding a violation of a law, rule, or regulation that endangers public health or safety, or (b) which she reasonably believes constitutes an improper governmental action; and [iii] a causal connection between the disclosure and the adverse personnel action.

*Wetzel* v. *Town of Orangetown*, No. 06 Civ. 6117 (SCR), 2010 WL 743039, at *17 (S.D.N.Y. Mar. 2, 2010) (quoting *Burns* v. *Cook*, 458 F. Supp. 2d 29, 44

(N.D.N.Y. 2006)).  Plaintiff's termination unquestionably satisfies the requirement of an adverse personnel action.  Nor do Defendants contest that Plaintiff has sufficiently alleged a disclosure and a causal connection between the disclosure and the adverse personnel action.  (*See* Def. Br. 18-19). Defendants contend, however, that Plaintiff's complaints pertained neither to violations of a law, rule, or regulation that endangers public health or safety, nor to behavior that she reasonably believed constituted an improper governmental action.

The Court is not convinced by Defendants' categorical assertion that Plaintiff's Complaint, which alleges violations of rules requiring accurate disclosure of statistics about the NYPD's use of chokeholds and controversial stop-and-frisk tactics, "does not allege that defendants' conduct posed a danger to public health or safety."  (Def. Br. 18).  Yet the Court need not resolve whether Plaintiff satisfies Section 75-b(2)(a)(i), because Section 75-b(2)(a)(ii) requires only that Plaintiff had a reasonable belief that she was complaining of an improper governmental action, consisting of "any action by a public employer or employee … which is in violation of any federal, state or local law, rule or regulation."

Plaintiff has adequately alleged that she was retaliated against for complaining about Taylor's sexual harassment under the standards set forth by federal, state, and local antidiscrimination laws, which employ a similar standard as Section 75-b, requiring a plaintiff to demonstrate "good faith, reasonable belief that the underlying challenged actions of the employer

violated the law." *Manoharan*, 842 F.2d at 593 (internal quotation marks omitted).  For the same reasons set forth *supra*, therefore, Plaintiff has adequately alleged retaliation in violation of Section 75-b with regard to her complaints against Taylor.

As Defendants note, most of Plaintiff's allegations regarding her complaints about Emery focus on his proposals, rather than his actions.  As defined in Section 75-b, such proposals are not reasonably understood as falling within the scope of an "improper governmental action," defined as "any action by a public employer or employee … which *is* in violation of any federal, state or local law, rule or regulation."  N.Y. Civ. Serv. Law § 75-b(2)(a)(ii) (emphasis added).  However, Plaintiff has adequately alleged at least two consummated actions: Emery's failure to conduct himself in an impartial manner in CCRB reviews of individual incidents, and the CCRB's publication of a report containing inaccurate chokehold statistics.  (Compl. ¶¶ 48-54).  Such conduct could reasonably be understood to violate at least two provisions of the New York City Charter: Chapter 18-A § 440(a), specifically governing the CCRB, requiring that "the investigation of complaints concerning misconduct by officers of the department towards members of the public be complete, thorough and impartial," and that "[t]hese inquires must be conducted fairly and independently, and in a manner in which the public and the police department have confidence"; and Chapter 49 § 1116(b), which prohibits "[a]ny officer or employee of the city or of any city agency [from] knowingly mak[ing] a false or deceptive report or statement in the course of duty."

Accordingly, Plaintiff has adequately stated a claim for improper retaliation under Section 75-b(2)(a)(ii) against the City of New York. Plaintiff's Section 75-b claims against Defendants Taylor and Emery in their individual capacities, however, are dismissed, as "Section 75-b does not provide for a cause of action against individuals." *Finch* v. *New York*, No. 10 Civ. 9691 (VB), 2012 WL 2866253, at *11 (S.D.N.Y. May 30, 2012) (citing *Fry* v. *McCall*, 945 F. Supp. 655, 666 (S.D.N.Y. 1996); *Kirwin* v. *N.Y.S. Office of Mental Health*, 665 F. Supp. 1034, 1039 (E.D.N.Y. 1987)).

### 7.   Plaintiff's Request to Amend the Complaint Is Denied

Plaintiff has requested leave to amend the Complaint should the Court find any of her claims wanting under Federal Rule of Civil Procedure 12(b)(6). (*See* Pl. Opp. 26 n.9). The Court has already issued both a scheduling order (Dkt. #19) and an order setting out the time by which Plaintiff could amend her complaint in response to Defendants' pre-motion conference letter, which laid out the grounds on which Defendants would seek to dismiss the original complaint. Accordingly, "the lenient standard under Rule 15(a), which provides leave to amend 'shall be freely given,' must be balanced against the requirement in Rule 16(b) that the Court's scheduling order 'shall not be modified except upon a showing of good cause.'" *Grochowski* v. *Phx. Constr.*, 318 F.3d 80, 86 (2d Cir. 2003) (quoting older versions of Federal Rules of Civil Procedure 15(a) and 16(b)), *cited in Holmes* v. *Grubman,* 568 F.3d 329, 334-35 (2d Cir. 2009). When considering whether good cause exists, the "diligence of the moving party" is a primary consideration. *Holmes*, 568 F.3d at 335.

23

Diligence of the moving party "is not, however, the only consideration.  The district court, in the exercise of its discretion under Rule 16(b), also may consider other relevant factors including, in particular, whether allowing the amendment of the pleading at this stage of the litigation will prejudice defendants." *Kassner* v. *2nd Ave. Delicatessen Inc.*, 496 F.3d 229, 244 (2d Cir. 2007).  Of course, it remains "proper to deny leave to replead where there is no merit in the proposed amendments or amendment would be futile." *Hunt* v. *Alliance N. Am. Gov't Income Trust, Inc.*, 159 F.3d 723, 728 (2d Cir. 1998).

Plaintiff argues that granting leave to replead "would be particularly appropriate in this case because the instant motion contains many arguments absent from Defendants' pre-motion conference letter." (*See* Pl. Opp. 26 n.9 (citing Dkt. #6)).  Yet the only grounds upon which the Court has found in Defendants' favor either were fully laid out in Defendants' pre-motion letter (i.e., that Plaintiff has failed to state a claim for breach of contract, and that Plaintiff's racial discrimination claims fail to state a claim under Section 1981, Title VII,[5] the NYSHRL, or the NYCHRL), or are unambiguous as a matter of law (i.e., the absence of a cause of action against individual defendants under Title VII or N.Y. Civ. Serv. Law § 75-b).  Amendment is thus futile with regard to Plaintiff's claims against Emery and Taylor under Title VII and Section 75-b.

With respect to Plaintiff's breach of contract and Section 1981 claims, Plaintiff has had ample opportunity to preview Defendants' arguments and

---

[5]     Defendants in their pre-motion letter made these arguments only with regard to Section 1981, the NYSHRL, and the NYCHRL; however, that is because Plaintiff only added her Title VII claims in the Amended Complaint.

modify her complaint accordingly.  Especially as Plaintiff urged the Court to allow discovery to proceed alongside the instant motion to dismiss, Plaintiff is not entitled to endless opportunities to perfect her pleadings.  Because Plaintiff has not shown good cause, the request to amend is therefore denied.

## CONCLUSION

For the reasons set forth in this Opinion, Plaintiff's claims against all Defendants for retaliation in violation of 42 U.S.C. § 1981 and for breach of contract are dismissed.  Plaintiff's claims against Defendants Taylor and Emery under Title VII and N.Y. Civ. Serv. Law § 75-b are dismissed.  Defendants' motion to dismiss is denied with respect to all other claims.

In order to allow the parties to complete discovery with the benefit of this Opinion, fact discovery shall be completed no later than **July 27, 2015**; this deadline will not be extended further.  Expert discovery shall be completed no later than **September 9, 2015**.

The Clerk of Court is directed to terminate Docket Entries 15, 27, and 28.

SO ORDERED.

Dated:      June 11, 2015
            New York, New York

_____
    KATHERINE POLK FAILLA
    United States District Judge